IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Dr. Gregg Battersby, ) | Case No. 8:15-cv-00066-BHH-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Stanley Ashley, Michelle Hendrix, ) | |
| Greg Williamson,[1] and John Does 1–20[2]; ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 53.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

This action was filed on January 6, 2015, alleging violations of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983.[3] [Doc. 1.] Plaintiff filed an amended complaint on January 13, 2015 [Doc. 6], a second amended complaint on February 18, 2015 [Doc. 12], and a third amended complaint on April 7, 2015 [Doc. 27]. Defendants filed

---

[1] On April 2, 2015, a voluntary stipulation of dismissal was entered pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, dismissing Chrissy Adams and Darrell Hill from this action. [Doc. 24.]

[2] Plaintiff has never identified "John Does 1–20", nor has he moved to substitute any actual party for these defendants. Because Plaintiff has not served these defendants, the Court finds "John Does 1–20" should be dismissed. *See* Fed. R. Civ. P. 4(m) (requiring defendants to be served within ninety days after a complaint is filed).

[3] Plaintiff was represented by counsel when this action was filed. However, on July 23, 2015, Plaintiff's motion to remove counsel was granted and Plaintiff has since proceeded pro se. [*See* Doc. 47.]

a motion for summary judgment on September 10, 2015. [Doc. 53.] On September 11, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised to respond to the motion and of the possible consequences if he failed to adequately respond. [Doc. 54.] Plaintiff filed a response in opposition to the motion on October 5, 2015 [Doc. 57], and Defendants filed a reply on October 16, 2015 [Doc. 60]. Accordingly, the motion is ripe for review.

## **BACKGROUND**[4]

Plaintiff is a chiropractor providing chiropractic services out of his home. [Doc. 27 ¶ 8.] On August 2, 2013, Plaintiff was arrested on one count of indecent exposure "by Defendants." [*Id.* ¶ 9.] This charge, Case Number 2013A0410900191, resulted from allegations that Plaintiff exposed himself to a patient, Jane Morton ("Morton"), at his place of business. [*Id.* ¶¶ 10–12.] Morton provided an audio statement, which after being withheld initially, was eventually produced for Plaintiff. [*Id.* ¶ 17–35.] In the initial incident report, Morton alleged "Plaintiff answered the door wearing a men's robe and during her treatment he dropped his robe on the floor and was completely nude with a fully erect penis." [*Id.* ¶ 15 (internal quotations omitted).] In the subsequent audio statement, Morton stated Plaintiff "came to the door. He had a towel on . . ." [*Id.* ¶ 18.] Citing the contradictory statements, Plaintiff alleges Defendants lacked probable cause to obtain an arrest warrant. [*Id.* ¶ 37.] The criminal charge against Plaintiff was dismissed on April 24, 2014. [*Id.* ¶ 26.]

---

[4] The facts included in this background section are taken directly from Plaintiff's third amended complaint. [Doc. 27.]

Pursuant to 42 U.S.C. § 1983, Plaintiff asserts Defendants have violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution. [*Id.* ¶¶ 50–52.] Plaintiff seeks compensatory and punitive damages, attorney's fees, and any other relief the Court deems appropriate. [*Id.* at 7.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action pro se, which requires the court to liberally construe his pleadings. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Haines*, 404 U.S. at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Requirements for a Cause of Action Under § 1983

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating

federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed

4

of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When

determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

6

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

**Fourth Amendment Claims**

Defendants assert probable cause existed for Plaintiff's arrest, therefore, they did not violate Plaintiff's Fourth Amendment rights. [Doc. 53-1 at 9–16.] Plaintiff argues that his arrest was made pursuant to a warrant not supported by probable cause in violation of the Fourth Amendment.[5] [Doc. 27 ¶ 36.]

Section 1983 actions premised on alleged false arrest and/or false imprisonment claims are analyzed as unreasonable seizures under the Fourth Amendment. *See, e. g., Brown v. Gilmore*, 278 F.3d 362, 367–68 (4th Cir. 2002) (recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer decided to arrest him without probable cause to establish an unreasonable seizure under the Fourth Amendment); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) (stating claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of

---

[5] Plaintiff's response in opposition states that he is claiming Defendants arrested him without probable cause; however, he is *not* raising claims for malicious prosecution, false arrest, or false imprisonment. [Doc. 57 at 7.] While Plaintiff states that he is not raising such claims, because he filed his response pro se maintaining that Defendants arrested him without probable cause, the Court will liberally construe the pleading and address the merits of Plaintiff's Fourth Amendment claims.

7

the Fourth Amendment"). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[A] claim for false arrest may be considered only when no arrest warrant has been obtained." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir.1998); *see also Brooks v. City of Winston-Salem*, 85 F.3d 178, 181–82 (4th Cir.1996) (determining that when the arresting official makes the arrest with a facially valid warrant, it is not false arrest).

"[A]n indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause" unless the police officer "deliberately supplied misleading information that influenced the decision." *Massey v. Ojaniit*, 759 F.3d. 343, 356–57 (4th Cir. 2014) (internal quotation marks and citation omitted). Moreover, an arrest made pursuant to a facially valid warrant will not support a claim for false arrest or malicious prosecution under the Fourth Amendment. *See Porterfield*, 156 F.3d at 568. To demonstrate that an officer seized an individual pursuant to an arrest warrant without probable cause, a plaintiff must show that the officer "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's Cty.*, 475 F.3d 621, 627 (4th Cir. 2007) (internal quotation marks and citations omitted).

To state a claim for malicious prosecution under § 1983, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 646, 647 (4th Cir. 2012) (citing *Durham v. Horner*, 690 F.3d 183, 188

8

(4th Cir. 2012)). The test to determine whether probable cause existed for a seizure is an objective one, based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983); *see also Mazuz v. Maryland*, 442 F.3d 217, 224 (4th Cir. 2006) (citing *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985)) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken.") (abrogated on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 235 (2009)). Specifically, the totality of the circumstances includes "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information," *Beck v. Ohio*, 379 U.S. 89, 96 (1964), and such facts and circumstances constitute probable cause if they are "sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense," *id.*

Defendants identify the following probable cause for the arrest warrant. On July 8, 2013, Morton went to the Anderson County Sheriff's Office to report that Plaintiff exposed himself to her. [Doc. 53-2.] Morton met with Defendant Deputy Marter ("Marter"), who completed an Incident Report. The Incident Report states:

> On 7-8-13 Deputy Marter received a report of sexual indecent exposure. I spoke with the victim whom advised that while arriving at the office which is also Battersby's residence he had answered the door in a men's robe. He asked her in and disappeared for a few minutes. Upon returning he was still in his robe, but had her get onto the exam table as he started to do chiropractic adjustments in her neck area. He then used a mechanical massager to work upon her neck area. After completing this he then asked her to move to the other table

> and she lied face down and he began to use the same item to massage her lower extremities. She stated this was not normal and felt that it was inappropriate as he was moving lower towards her bottom area and he was way too close to her while doing this. She stated that she felt very uncomfortable and wanted to leave the office. As the victim got up to leave, Battersby had dropped his robe to the floor and was very close to her with a fully erect penis. She felt like if she did not leave he may try to assault her. There was no explanation for his behavior nor did he attempt any sexual contact of her at that moment. She quickly left the location without further incident. She further advised that the subject has been calling her over the past three weeks attempting to get her back in the office so far she had declined and wont return.

[*Id.*] Shortly thereafter, Defendant Stanley Ashley ("Ashley") with the Anderson County Sheriff's Office met with Morton to discuss her allegations. An audio recording was made of that meeting:

> Ms. Morton: [. . .] He came to the door. He had a towel on.
> Mr. Ashley: He had a towel on?
> Ms. Morton: He had a towel, yes, sir. It was like a brownish, reddish color.
> [. . .]
> And he did that, and then he put this thing on me that vibrates, which I've had that done while I was on vacation. First time I had ever had it done, as a matter of fact, was at the beach. When I had it done at the beach, they set it up here and vibrated. He went across my upper back a little bit, but he mostly focused on buttocks and kind of where my legs meet my butt cheeks, that area, and I won't say lower back but that area. That's when I started getting creeped out. I'm laying [sic] face down. And then after he gets done with that—because I had on a shirt and it comes up and it ties. So the back was exposed, from here up I mean. After that vibrating thing, I feel something on my back, and it doesn't feel like the normal massage—he's never done this to me before, but it didn't [feel] like what I got at the beach just about every day. So I go to look up to see what he's doing, and

> > that's when I noticed that he has nothing on and he's standing there with an erection and—
> 
> Mr. Ashley: So he's buck solid—
> Ms. Morton: Completely. [. . .].

[Doc. 53-3.]

On July 25, 2013, another individual came forward to report similar behavior by Plaintiff. Ashley prepared an Incident Report which stated:

> The listed victim did report to this R/O that [on May 23, 2013], the subject did expose his genitalia without consent or request of the victim. The victim was a patient of the subject's chiropractic practice. The offense did occur in the office/therapy area. The subject does also reside at this location.

[Doc. 53-4.]

Ashley completed affidavits in support of arrest warrants. In Arrest Warrant 2013A0410900191, the warrant at issue in the present case, Ashley stated that "on June 1, 2013 in the county of Anderson, one Gregg Newton Battersby did willfully and maliciously expose his private parts to victim Jan G. Morton at 7800 Hwy. 81S, a public place or property within view of a street or highway." [Doc. 53-6.] In Arrest Warrant 2013A0410100898, Ashley stated that "on May 23, 2013 in the county of Anderson, one Gregg Newton Battersby did willfully and maliciously expose his private parts to Carrie Neal at 7800 Hwy 81 S, a residence and chiropractic business open to the public." [Doc. 53-5.] The warrants were presented to the Honorable Samuel Lollis and the Honorable William Sharp, respectively, each of whom found probable cause to arrest the Plaintiff and each of whom signed the respective warrants. [Docs. 53-5; 53-6.]

Plaintiff was arrested on August 2, 2013. Plaintiff retained Sarah Drawdy, Esquire, to represent him, and on August 30, 2013, after a preliminary hearing, the court determined

11

that probable cause existed to arrest Plaintiff and that the charges would go forward. The cases were presented to the grand jury, who returned true bill indictments on November 19, 2013, on both charges. [Docs. 53-7; 53-8.] Subsequently, the Tenth Circuit Solicitor's Office declined to pursue the case and it was nolle prossed. [Doc. 53-1 at 5.]

After careful review and consideration, this Court agrees that there was no Fourth Amendment violation in this case. The Court concludes that in light of the totality of the circumstances, Ashley possessed sufficient evidence to believe, reasonably, that Plaintiff had committed crimes. Ashley, therefore, appropriately sought and received arrest warrants from two neutral and detached magistrates. Because Ashley made the arrest with a facially valid warrant, it is not false arrest. *Brooks*, 85 F.3d at 181–82; *see also Clark v. Link*, 855 F.2d 156, 166 (4th Cir. 1988) ("[A] facially valid arrest warrant . . . provides the probable cause finding."). Additionally, the Court notes that the grand jury issued true bills of indictment on each of the charges. It is well established that true bill indictments are prima facie evidence of probable cause. *United States v. Soriano-Jarquin*, 492 F.3d 495, 502 (4th Cir. 2007) (noting probable cause may be satisfied by a grand jury indictment); *United States ex rel. Haim v. Mathues*, 19 F.2d 22, 23 (3d Cir.1927) ("The indictment is itself evidence that there was probable cause . . . "); *White v. Coleman*, 277 F.Supp. 292, 297 (D.S.C. 1967) ("[W]here the grand jury have returned a true bill upon the charge made, such finding amounts to a judicial recognition that probable cause does exist . . . and infers prima facie probable cause for the prosecution." (citation omitted)). Accordingly, based on the record and the totality of the circumstances, the Court concludes no reasonable jury could find that Plaintiff's arrest was made without probable cause.

Plaintiff's argument that Morton's contradictory statements, namely that Morton initially reported Plaintiff was wearing a towel and later stated Plaintiff was wearing a men's robe, indicate Morton was untrustworthy, thus, probable cause did not exist [Doc. 57 at 7–14] is without merit. The Court finds that the use of Morton's statement is enough to create probable cause. *See, e.g., Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker. . . . Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." (internal citations omitted)); *see also United States v. Beckham*, 325 F.Supp.2d 678, 687 & n.16 (E.D. Va. 2004) (collecting cases). The Court acknowledges that the initial incident report, a ten-line summary created by Marter after his initial interview with Morton, indicates Plaintiff was wearing a robe [Doc. 53-2], while the recorded interview given by Morton indicates Plaintiff was wearing a towel [Doc. 53-3]. However, in each statement Morton maintains Plaintiff exposed himself to her while she was receiving chiropractic care. Plaintiff has failed to introduce any facts that existed at the time of the statements which would have led a reasonable police officer to believe that the statements did not provide probable cause or which would have shown that Defendants intentionally lied on or made material omissions from the affidavit. Based on the record before the Court and the totality of the circumstances, no reasonable jury could find that Plaintiff's arrest was made without probable cause. Accordingly, Plaintiff's claims for false arrest and/or false imprisonment are without merit.

Similarly, to the extent Plaintiff is attempting to assert a claim for malicious prosecution, his claim fails. Plaintiff cannot establish all the elements for malicious prosecution. *See Evans*, 703 F.3d at 647. While Defendants concede the criminal charge against Plaintiff was initiated based upon arrest warrants sworn by Ashley and that the criminal charge against Plaintiff was resolved in his favor, as explained above, Plaintiff cannot demonstrate a lack of probable cause. Consequently, Defendants' motion for summary judgment should be granted as to Plaintiff's Fourth Amendment claims.

**Fourteenth Amendment Claim**

Defendants next assert they did not violate Plaintiff's right to Due Process under the Fourteenth Amendment because the alleged exculpatory evidence, the audio statement, was produced. [Doc. 53-1 at 16–18.] Plaintiff maintains Defendants violated his Due Process rights in violation of the Fourteenth Amendment by withholding exculpatory audio statements from the Solicitor. [Doc. 27 at 6; Doc. 57 at 14.]

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To prove a *Brady* violation, an accused must show that the evidence (1) is exculpatory or impeaching, (2) was suppressed by the Government, and (3) was material to his defense, i.e., he was prejudiced by the suppression. *See United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010). Although *Brady* and its progeny do not address whether a police officer violates the Constitution by withholding evidence

14

acquired during the course of an investigation, the Fourth Circuit has held that a police officer who withholds exculpatory information from a prosecutor can be liable under § 1983, *Goodwin v. Metts*, 885 F.2d 157, 162 (4th Cir. 1989), but only when the officer's failure to disclose "deprived the § 1983 plaintiff[ ] of [his] right to a fair trial," *Taylor v. Waters*, 81 F.3d 429, 436 n.5 (4th Cir. 1996).

      Here, the audio recording evidence Plaintiff asserts constitutes exculpatory evidence refers to the July 18, 2013 audio recording of Ashley's interview with Morton. [Doc. 53-3.] As explained above, Morton states in her interview with Ashley that Plaintiff was wearing a towel [*id.*], which contradicts the initial incident report, which indicates Plaintiff was wearing a robe at the time of the alleged incident [Doc. 53-2]. Although Plaintiff's initial requests for the case files, including the audio recording apparently went unanswered [Doc. 57, Ex. 8, 9], the audio recording was produced in response to Plaintiff's February 28, 2014 motion to compel [Doc. 27 ¶¶ 24–25]. Plaintiff states the audio recording was received by the Tenth Circuit Solicitor's Office on March 21, 2014, and on April 24, 2014, the Solicitor's Office decided not to pursue the case, and it was nolle prossed. [Doc. 57, Ex.11.] Because Plaintiff was never tried on this indecent exposure charge, he has not stated a claim that Defendants violated his Fourteenth Amendment rights by their alleged failure to disclose exculpatory evidence. *See Taylor*, 81 F.3d at 436 n.5; *Hockett v. Acosta*, 2:03cv00012, 2004 WL 1242757, at *3 (W .D. Va. June 3, 2004) (finding no Fourteenth Amendment violation when plaintiffs did not allege that any favorable evidence was unavailable at their criminal trial); *Windham v. Graham*, 9:08cv1935, 2008 WL 3833789, at *7–*9 (D.S.C. Aug.14, 2008) (pretrial detainee who alleged that police withheld favorable evidence had no cause of action under the Fourteenth Amendment because he had not yet

been tried). The record shows Defendants produced the audio recording of Ashley's interview with Morton in response to Plaintiff's February 28, 2014 motion to compel. [Doc. 27 ¶ 24.] Plaintiff concedes that subsequently, the criminal charges against him were dropped. [*Id.* ¶ 26.] Because the audio recording was produced and the charges against Plaintiff were dropped, Plaintiff cannot demonstrate that he was deprived of his right to a fair trial. *See Taylor*, 81 F.3d at 436 n.5. Accordingly, the Court finds Defendants' motion for summary judgment should be granted as to Plaintiff's Fourteenth Amendment claim.

**Qualified Immunity**

Finally, Defendants argue they are entitled to qualified immunity. [Doc. 53-1 at 19–23.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky*, 942 F.2d at 260 (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

**RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment [Doc. 53] be GRANTED. It is further recommended that Plaintiff's motion in limine [Doc. 59] be FOUND AS MOOT.

IT IS SO RECOMMENDED.

                                        s/Jacquelyn D. Austin
                                        United States Magistrate Judge

May 5, 2016
Greenville, South Carolina